# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

| | | |
|---|---|---|
| _____ ) | | |
| In re: | ) | Chapter 7 |
| | ) | Case No. 10-32291 |
| BRETT M. MOLLISON, | ) | |
| | ) | |
| Debtor | ) | |
| _____ ) | | |
| | ) | |
| DAVID W. OSTRANDER, | ) | Adversary Proceeding |
| TRUSTEE, | ) | No. 11-3025 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SOURCE ONE FINANCIAL | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant | ) | |
| _____ ) | | |

## MEMORANDUM OF DECISION

Before the Court are two matters, both of which center around § 362(h) of the

Bankruptcy Code,[1] added by the Bankruptcy Abuse and Consumer Protection Act of

2005 (the "BAPCPA").[2]  Pursuant to the relatively new § 362(h), the automatic stay

under § 362(a) (the "Automatic Stay") terminates with regard to personal property that

secures a prepetition debt if the debtor fails to timely state and then perform his or her

intention to surrender, redeem, or reaffirm the property.  The issues before the Court

---

[1] See 11 U.S.C. § 101 et seq. (the "Bankruptcy Code" or the "Code").  All references to statutory
sections are to the Bankruptcy Code unless otherwise specified.

[2] Pub. L. 109-8, 119 Stat. 23, enacted April 20, 2005, effective October 17, 2005.

involve not only the scope and operation of § 362(h), but also the impact of that section on a Chapter 7 trustee's powers under other sections of the Bankruptcy Code.

I.    FACTS AND TRAVEL OF THE CASE

Brett M. Mollison (the "Debtor") filed this Chapter 7 case on November 8, 2010 (the "Petition Date").  On the Petition Date, the Debtor owned a 2003 Cadillac CTS (the "Cadillac"), which he disclosed on his Schedule B, estimating the current value as $6,000.[3]  On his Schedule D, the Debtor indicated that "Source One Financial Corp." ("Source One") held a lien on the Cadillac to secure a claim in the amount of $8,800. And on Schedule J, the Debtor indicated that his monthly installment payment on that auto loan was $320.

On the Petition Date, the Debtor also filed a "Chapter 7 Individual Debtor's Statement of Intention" (the "Statement of Intent").  In his Statement of Intent, the Debtor listed the debt owed to Source One and Source One's security interest in the Cadillac and indicated that the Cadillac would be "retained."  The Debtor did not, however, indicate on the Statement of Intent that the Cadillac would be redeemed or the underlying debt reaffirmed.  Instead, the Debtor wrote on the Statement of Intent that he intended to "make regular monthly payments" on account of the debt.

At the meeting of creditors required by § 341 (the "341 Meeting") held on December 7, 2010, David W. Ostrander, the Chapter 7 trustee (the "Trustee"), questioned the Debtor about the Cadillac.  The Debtor testified that he was in possession of the certificate of title for the Cadillac (the "Title").  The Trustee requested a

---

[3] On Schedule C, the Debtor claimed an exemption in the Cadillac under § 522(d)(2), but listed the value of that exemption as "$0.00."

copy of the Title, which he received on December 22, 2010. Despite various indications in the Debtor's schedules that Source One was a secured creditor with respect to the Cadillac, the Title did not identify any lienholders.

In addition to requesting a copy of the Title, the Trustee had also requested a copy of the purchase contract between the Debtor and Source One (the "Contract"). While the submitted pleadings do not explain why the Debtor was delayed in producing a copy of the Contract, it is undisputed that the Trustee did not receive a copy of the Contract until April 5, 2011.[4]

Upon receipt of the Contract on April 5, the Trustee ran a search of the Title in the database maintained by the Massachusetts Department of Transportation Registry of Motor Vehicles (the "Registry") and confirmed that Source One was not listed as a lienholder. See Trustee's Mot. for Sanctions, Ex. D, Mass. Registry of Motor Vehicles Title/Lien Inquiry-Details 4/5/2011. That day, the Trustee contacted Source One by telephone and spoke with an Attorney Matthew E. Mitchell ("Attorney Mitchell"). The Trustee followed that conversation with an email to Attorney Mitchell confirming the Trustee's position that Source One's lien was unperfected and avoidable. Apparently, the Trustee hoped Source One would concede its unsecured position vis-à-vis the bankruptcy estate, and he proposed a settlement to Source One. Attorney Mitchell did not immediately acquiesce, however, and responded to the Trustee's further email sent April 11 by indicating that he was still "checking into it." Stipulated Facts, 3 ¶ 18, Aug. 4, 2011, ECF No. 42.

---

[4] The Contract was originally signed by the Debtor and a representative of the auto dealership where the Cadillac was purchased, but reflects that the Contract was to be assigned to Source One. See Trustee's Mot. for Sanctions, Ex. A, Retail Installment Sale Contract, June 20, 2011, ECF No. 30.

In fact, Source One was not prepared to readily concede unsecured status, and, unbeknownst to the Trustee, began to take steps to perfect its lien on the Cadillac. After the Trustee's initial contact, Source One contacted the Registry in an attempt to figure out why its lien was not noted on the Title. Michael Cain, a Source One representative (who had been copied on the emails sent between the Trustee and Attorney Mitchell), traveled to the Registry office and spoke with at least one Registry employee, setting into motion the process of correcting the Title. By April 27, when Attorney Mitchell again emailed the Trustee, Source One had succeeded in having the title "suspended" by the Registry after a Registry hearing in which it was determined that the original dealer had made a clerical error in processing the Title.[5] And in a May 4 email, Attorney Mitchell reported to the Trustee his belief that "Source One will ultimately be listed as the First Lienholder after the hearing." Stipulated Facts, 4 ¶ 23.

The Trustee's response to Attorney Mitchell's reports was understandably less-than-positive. In an email dated April 27, the Trustee warned Attorney Mitchell that efforts to fix any problems with the Title would be "void," id. at 4 ¶ 22, and on May 5, the Trustee informed Attorney Mitchell via email that any attempt to have Source One's lien on the Cadillac perfected would violate the Automatic Stay, id. at 4 ¶ 24. But despite the fact that Source One was taking fairly aggressive steps to perfect its lien, the Trustee continued to correspond with Attorney Mitchell, exchanging further settlement offers (all of which were rejected). On May 18, 2011, the Trustee was contacted by a new attorney for Source One, James McGinley. When the Trustee and Attorney McGinley were unable to reach a resolution, the Trustee finally took action with the Court, filing an

---

[5] See Trustee's Mot. for Sanctions, Ex. B, Mass. Registry of Motor Vehicles Registration/Title Inquiry 4/26/2011.

expedited "Motion to Compel Turnover of Estate Property" (the "Turnover Motion") on

May 19, 2011.

In the Turnover Motion, the Trustee averred that the Cadillac was property of the

bankruptcy estate, that the alleged lienholder (Source One) did not have a perfected lien

as of the Petition Date, and that the Trustee believed that "Source One may be

attempting to note its lien on the Title."   Turnover Motion, 2 ¶ 13, ECF No. 22.   The

Trustee also indicated his intention to file an adversary proceeding seeking to avoid

Source One's lien and preserve it for the benefit of the bankruptcy estate under §§ 544

and 551, respectively.   Accordingly, in the Turnover Motion, the Trustee asked the Court

for an order compelling the Debtor to turn over the Cadillac, the Title, and the keys to the

Trustee pending the outcome of the adversary proceeding or, alternatively, the entry of

an order compelling the Debtor to make his $320 monthly car payments directly to the

Trustee.

At an expedited hearing on the Turnover Motion held on May 25, 2011 (the

"Turnover Hearing"), the Trustee informed the Court that he had been told that very

morning by Debtor's counsel that Source One had sent paperwork to the Debtor to have

the Title corrected and that the Debtor had completed the paperwork and mailed the Title

and the paperwork to Source One in the envelope that was provided to him.   Based on

the Trustee's representations, the Court unhesitatingly stated that Source One's actions

appeared to be blatantly in violation of the Automatic Stay and ordered the Debtor to turn

the Cadillac over to the Trustee.

On May 31, 2011, the Trustee filed an adversary proceeding against Source One,

seeking to avoid Source One's unperfected lien on the Cadillac and to preserve the

avoided lien for the benefit of the bankruptcy estate (the "Adversary Proceeding").

Shortly thereafter, on June 10, 2011, the Trustee filed a "Motion for Sanctions Against

Source One Financial Corporation for Willful Violation of the Automatic Stay" (the

"Sanctions Motion") in the Debtor's main case.   In the Sanctions Motion, the Trustee

provided the Court with more detailed information on Source One's postpetition attempts

to perfect its lien, asserting that those actions were clear violations of the Automatic

Stay.   On June 28 and June 30, respectively, Source One filed an opposition to the

Sanctions Motion and a motion to dismiss the Adversary Proceeding (the "Motion to

Dismiss").   After a hearing on both motions, the Court took both the Sanctions Motion

and the Motion to Dismiss under advisement.

II.    POSITIONS OF THE PARTIES

   **A. The Sanctions Motion**

   There is no dispute that the postpetition actions taken by Source One to perfect its

lien in the Cadillac would be contravention of the Automatic Stay, assuming that the

Automatic Stay remained in effect when those actions were taken.   Source One

contends, however, that the motion must be denied because, pursuant to § 362(h), the

Automatic Stay had terminated with respect to the Cadillac at the time it took steps to

perfect its lien.[6]   According to Source One, because the Debtor failed to elect in his

Statement of Intent either reaffirmation of Source One's secured claim or redemption of

---

[6] As will be explained in greater detail below, § 362(h) provides for termination of the Automatic
Stay with respect to personal property of an individual debtor when the personal property
secures a prepetition claim and the debtor either fails to file an appropriate statement of intention
with regard to the property or fails to act according to his or her stated intention within certain
deadlines.   See 11 U.S.C. § 362(h).

the Cadillac, the Automatic Stay terminated by operation of § 362(h)(1) on January 7, 2011, thirty days after the first date set for the 341 Meeting.

The Trustee raises several arguments against the applicability of § 362(h)(1) to the facts of this case.  First, the Trustee argues that § 362(h)(1) does not apply because the Debtor *did* file a Statement of Intent and acted consistent with his stated intent – retaining the Cadillac and continuing monthly payments to Source One.  The Trustee contends that this was sufficient compliance under § 362(h)(1) to prevent the termination of the Automatic Stay.  In response, Source One argues that the Debtor failed to comply with § 362(h)(1)(A) *ab initio* by failing to choose one of the elections with respect to the Cadillac permitted by that subsection (namely, surrender, reaffirmation, or redemption), thus triggering the termination of the Automatic Stay.

Second, the Trustee maintains that § 362(h)(1) does not apply because Source One is not within the class of creditors protected by that section.  The Trustee reads § 362(h)(1) as intended to protect secured creditors who are *not* receiving ongoing payments, thereby affording such creditors relief from the Automatic Stay in order to repossess and protect depreciating collateral.  Since "Massachusetts law does not readily permit repossession of a motor vehicle when a borrower is not in monetary default," In re Koufos, 09-44158-MSH, 2010 WL 4638408, *2 (Bankr. D. Mass. Nov. 8, 2010), the Trustee argues that Source One could not have repossessed the Cadillac (because the Debtor was continuing to make postpetition payments), and, therefore, § 362(h)(1) should not be considered applicable in this case.

Third, the Trustee contends § 362(h)(1) does not apply because Source One's lien on the Cadillac was not perfected.  Citing to Gigandet v. HSBC Auto Finance (In re

Houseal), Bankr. No. 306-02082, Adversary No. 306-0429A, 2007 WL 5582053 (Bankr. M.D. Tenn. Feb. 16, 2007), the Trustee maintains that § 362(h)(1)'s reference to personal property "securing in whole or in part a claim" refers only to property covered by a *perfected* security interest.  Since Source One's lien was not perfected, the Trustee argues, its claim against the Debtor does not come within the purview of § 362(h)(1).

In response, Source One insists that a plain reading of § 362(h)(1) compels the conclusion that the Cadillac *did* secure Source One's claim against the Debtor, regardless of whether the security interest was perfected.   Therefore, Source One concludes, § 362(h)(1) applies in this case, despite the Trustee's protestations that Source One is not the type of creditor the provision was enacted to protect.  According to Source One, all that is required to trigger § 362(h)(1) is the existence of personal property of the debtor or the estate subject to a security interest.  Source One says that the In re Houseal case is inapposite, because the court there did *not* say that unperfected liens were not security interests for purposes of § 362(h)(1).  Rather, Source One argues that In re Houseal involved the question of whether the creditor had a secured interest in the debtor's personal property *at all*, whether perfected or unperfected.

Source One also argues that, even if this Court were to conclude that Source One violated the Automatic Stay, sanctions for any violation would be inappropriate.  First, Source One cites to Judge Bailey's recent holding that a trustee does not qualify as an "individual" to whom sanctions can be awarded under the relevant Code provision, § 362(k), see In re Sayeh, 445 B.R. 19, 27 (Bankr. D. Mass. 2011), and urges this Court to reach the same conclusion.   Second, Source One says that sanctions are

unwarranted because it acted in a good faith belief that the Automatic Stay had terminated under § 362(h)(1).  See 11 U.S.C. § 362(k)(2) (recovery for violation of automatic stay limited to actual damages where violating party acted in a good faith belief that § 362(h) applied).

### B. The Motion to Dismiss

Through the Complaint filed in the Adversary Proceeding,[7] the Trustee seeks avoidance of Source One's lien on the Cadillac pursuant to § 544(a)(1), based on the undisputed allegation that the lien was not perfected on the Petition Date.[8]  Relying on § 551 of the Code, the Trustee asserts that the lien should therefore be preserved for the benefit of the bankruptcy estate.  See 11 U.S.C. § 551.  Finally, the Trustee asks that the postpetition payments to Source One be turned over to the Trustee.

Source One has moved to dismiss the Complaint on the grounds that the Trustee no longer has the power to avoid its unperfected lien.  Noting that § 362(h)(1) not only terminates the Automatic Stay with respect to personal property subject to its provisions, but also provides that such property "shall no longer be property of the estate," 11 U.S.C.

---

[7] After these matters were taken under advisement, the Trustee filed an amended complaint and motion to amend on August 29, 2011.  The amended complaint added a paragraph requesting return of the $2,078.34 paid by the Debtor to Source One postpetition.  No objections to that motion were filed, and the request to amend the complaint was allowed.  In fact, even before the amended complaint was filed, Source One acknowledged that the Trustee was attempting, through the Adversary Proceeding, to recover postpetition payments.  See Mem. in Supp. of Mot. to Dismiss, 2, AP No. 11-3025, June 30, 2011, ECF No. 7.  Accordingly, this memorandum refers to the complaint as amended as the "Complaint."

[8] At paragraph 17 of the Complaint, the Trustee references his "rights and powers of a hypothetical lien creditor" under § 544(a)(1), but later in the Complaint, he requests relief pursuant to § 544(a)(3).  See Amended Complaint,  2 ¶ 17, 3 ¶ 20, AP No. 11-3025, Aug. 29, 2011, ECF No. 16.  Neither party has been confused or prejudiced by this apparent typographical error, as both have acknowledged that subsection (a)(3) was erroneously cited.  See Mem. in Supp. of Trustee's Opp'n to Mot. to Dismiss, 2 n.1, AP No. 11-3025, Aug. 12, 2011, ECF No. 12; Mem. in Supp. of Mot. to Dismiss, 3 n.1.  The Court therefore interprets the Complaint as having been brought pursuant to § 544(a)(1).

§ 362(h)(1), Source One says the Cadillac is no longer property of the bankruptcy estate and therefore is no longer subject to the Trustee's § 544(a) avoiding powers.

Source One further argues that, even assuming the lien could be avoided pursuant to § 544(a), it cannot be preserved for the benefit of the estate, since under § 551 an avoided lien is preserved only "with respect to property of the estate."   11 U.S.C. § 551.  And because the Cadillac is no longer property of the bankruptcy estate, there is no longer any property of the estate to which the lien attaches and could be preserved.

Finally, as an alternative argument, Source One urges the Court to adopt the reasoning of the bankruptcy court in Noland v. HSBC Auto Fin., Inc. (In re Baine), 393 B.R. 561 (Bankr. S.D. Ohio 2008).  The court in In re Baine, faced with an almost identical factual situation and an attempt by a Chapter 7 trustee to avoid an unperfected lien, analogized the effect of § 362(h)(1)'s removal of property from the bankruptcy estate to the removal of property from the estate that occurs when property is abandoned under § 554.  Because the In re Baine court opined that a trustee loses the power to bring a § 544(a) avoidance action with regard to abandoned property, it concluded that property removed from the estate pursuant to § 362(h)(1) is likewise no longer subject to lien avoidance.

The Trustee responds by arguing that the effect of § 362(h)(1) cannot be properly analogized to the abandonment of estate property, as abandonment of estate property can occur only under § 554 of the Code, which contains specific notice and other substantive requirements.  The Trustee argues that Source One's reading of § 362(h)(1) would eviscerate the requirements for abandonment of estate property established by

10

§ 554 and would unjustifiably shorten the two-year statute of limitations for avoidance actions provided by § 546.   And the Trustee again relies on In re Houseal, arguing that the Cadillac remains property of the bankruptcy estate because § 362(h)(1) applies only to perfected security interests, and not to Source One's unperfected lien.   At any rate, says the Trustee, the language of § 544(a) establishes the Petition Date as the relevant time for measuring a trustee's ability to avoid an unperfected lien, and extends the trustee's avoidance power to all "property of the debtor," 11 U.S.C. § 544(a), not just property of the estate.   According to the Trustee, then, his § 544(a)(1) avoidance power is not truncated, even if § 362(h)(1) does apply.

III.    DISCUSSION

   A.  The Sanctions Motion

   "The automatic stay imposed by § 362(a) that arises upon the filing of a bankruptcy case is one of the 'cornerstones of bankruptcy law.'"   In re Blake, 452 B.R. 1, 12 (Bankr. D Mass. 2011) (quoting Curtis v. LaSalle Nat'l Bank (In re Curtis), 322 B.R. 470, 483 (Bankr. D. Mass. 2005)); see also Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997).   The Automatic Stay prohibits, inter alia, "any act to create, perfect, or enforce any lien against property of the estate" and "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case . . . ."   11 U.S.C. §§ 362(a)(4), (5).

   But once the Automatic Stay is terminated, either by court order on motion of an interested party, see, e.g., 11 U.S.C. § 362(d), or without court order by operation of

applicable Code provisions, see, e.g., 11 U.S.C. § 362(c), previously stayed actions against a debtor or property are once again permissible unless the claim is discharged. In this case, Source One argues that the Automatic Stay terminated with respect to the Cadillac on January 7, 2011 by operation of § 362(h)(1) – prior to Source One taking any action to perfect its lien.

Section 362(h), added to the Bankruptcy Code in 2005, terminates the Automatic Stay as to personal property of a debtor in certain instances, without the need for court order.   The Bankruptcy Appellate Panel for the Ninth Circuit recently addressed the purpose behind this new provision:

> Section 362(h) was added to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) as part of the amendments characterized as "Protections for Secured Creditors."  H.R. Rep. No. 109-31(I), 109th Cong., 1st Sess. 2005, reprinted in 2005 U.S.C.C.A.N. 88, 103. Section 362(h) was intended to provide greater protection to creditors by terminating the automatic stay with respect to personal property of the debtor if the debtor failed to timely reaffirm the underlying obligation or redeem the property.

Samson v. Western Capital Partners, LLC (In re Blixseth), 454 B.R. 92, 99 (B.A.P. 9th Cir. 2011).

Specifically, the relevant portion of § 362(h)(1) provides:

(1)    In a case in which the debtor is an individual, the stay provided by subsection (a) is *terminated with respect to personal property of the estate or of the debtor* securing in whole or in part a claim . . . and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2) –

(A)    to file timely any statement of intention required under section 521(a)(2) with respect to such personal property *or* to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property . . . [or] enter into a[ reaffirmation] agreement . . . applicable to the debt secured by such personal property . . .; and

> (B)   to take timely the action specified in such statement, . . .
> unless such statement specifies the debtor's intention to
> reaffirm such debt on the original contract terms and the
> creditor refuses to agree to the reaffirmation on such terms.

11 U.S.C. § 362(h)(1) (emphasis supplied).

Notably, if a debtor owns personal property that would be subject to termination of

the Automatic Stay pursuant to § 362(h)(1), the bankruptcy estate is not left entirely at

the mercy of the debtor.  If a trustee believes that a debtor's personal property subject to

§ 362(h)(1) also has value for the bankruptcy estate, the trustee is afforded the

opportunity, by leave of § 362(h)(2), to file a motion to prevent the automatic termination

of the Automatic Stay and removal of the property from the estate.  Such a motion must

be timely filed, as § 362(h)(2) provides:

> Paragraph (1) does not apply if the court determines, *on the motion of the
> trustee filed before the expiration of the applicable time set by section
> 521(a)(2)*, after notice and a hearing, that such personal property is of
> consequential value or benefit to the estate, and orders appropriate
> adequate protection of the creditor's interest, and orders the debtor to
> deliver any collateral in the debtor's possession to the trustee. . . .

11 U.S.C. § 362(h)(2) (emphasis supplied).

The crux of § 362(h)(1) is its creation of a "direct linkage" between a debtor's

failure to comply with § 521(a)(2) and termination of the Automatic Stay and removal of

property from the bankruptcy estate.  In re Baine, 393 B.R. at 564.  That link is created

by subsections (A) and (B) of § 362(h)(1), which correspond directly to subsections (A)

and (B) of § 521(a)(2) – each subsection imposing separate duties on individual debtors

who own property subject to a security interest.

The first component, set forth in sections 521(a)(2)(A) and 362(h)(1)(A), which the

Court will refer to as the "Filing Requirement," requires the debtor to file a Statement of

Intent by the earlier of 30 days from the filing of the petition or the date of the 341 Meeting.  See 11 U.S.C. § 521(a)(2)(A); 362(h)(1)(A).  But the Filing Requirement requires the debtor to both file the Statement of Intent *and* indicate whether the debtor intends to surrender or redeem the property or reaffirm the underlying debt.  See 11 U.S.C. § 521(a)(2)(A); 362(h)(1)(A).

Section 362(h)(1)(A) requires that a debtor "indicate 'either' surrender 'or' retention; if he chooses the latter, he must indicate 'either' redemption, reaffirmation, 'or' assumption. 'Either' means '[t]he one or the other.'. . . . [T]he 'either . . . or' disjunction has always meant that *one of the listed alternatives must be satisfied*."  Dumont v. Ford Motor Credit Co. (In re Dumont), 581 F.3d 1104, 1114 (9th Cir. 2009) (emphasis supplied) (quoting Am. Heritage Dictionary of the English Language 572 (4th ed. 2000)).[9] Thus, for purposes of the Filing Requirement, a debtor's failure to choose one of the "approved" options (surrender, redeem, or reaffirm) has the same effect as if the debtor failed to file the Statement of Intent at all.[10]

---

[9] Section 362(h) also applies to personal property subject to an unexpired lease, providing for termination of the Automatic Stay if the debtor fails to assume the lease pursuant to § 365(p) if the trustee does not do so.  11 U.S.C. § 362(h)(1)(A).  As the In re Dumont court noted, "Although traditionally ["either"] has referred to only two items, the standards of the English language have degenerated such that either is now acceptable with more than two clauses." 581 F.3d at 1114 (citing Am. Heritage Dictionary of the English Language 572-73 (usage note)). This Court respectfully disagrees.  The English language stands unblemished.  There is no reason to blame the language for the clumsiness of its users.

[10] Prior to the BAPCPA amendments, the First Circuit Court of Appeals had interpreted § 521(a)(2)(A) as requiring that a debtor elect to surrender, reaffirm, or redeem property securing a consumer debt, see Bank of Boston v. Burr (In re Burr), 160 F.3d 843, 849 (1st Cir. 1998), and that interpretation is now further buttressed by the specificity found in the new § 362(h)(1)(A). Even in those circuits where a "fourth" option of retaining and making payments on secured debts under § 521(a)(2)(A) had been sanctioned, several courts have now recognized that § 362(h)(1)(A) does not allow such a "ride through."  See, e.g., In re Dumont, 581 F.3d at 1113-14 (noting that the BAPCPA amendments are "inconsistent" with prior 9th Circuit law, which had allowed debtors to retain personal property and continue to make payments and holding that § 362(h) now requires debtors, in the statement of intention, to "'indicate in such statement that' he

Assuming a properly-filed Statement of Intent, the second subparts of both §§ 362(h)(1) and 521(a)(2) further require the debtor, "within 30 days after the first date set for the meeting of creditors . . ., [to] perform his intention with respect to such property."   11 U.S.C. § 521(a)(2)(B); see also 11 U.S.C. § 362(h)(1)(B).   This "Performance Requirement" thus contemplates that, within 30 days after the 341 Meeting, the debtor will have surrendered, redeemed, or tried to reaffirm any personal property that is subject to a security interest.

A cursory reading of § 362(h)(1) initially lends the impression that, where a debtor fails to comply with the Filing Requirement of subsection (A), the automatic stay terminates (and the personal property is removed from the bankruptcy estate) 30 days after the debtor files the bankruptcy petition.   And many courts interpreting that subsection have not hesitated to so hold.  See, e.g., In re Hoisington, 383 B.R. 369, 372 (Bankr. D.S.C. 2008) (automatic stay terminated 30 days after the petition filed when debtor did not indicate intent to surrender, redeem, or reaffirm collateral); In re McFall, 356 B.R. 674, 677 (Bankr. N.D. Ohio 2006) (same); In re Record, 347 B.R. 450, 453 (Bankr. M.D. Fla. 2006) (same); In re Craker, 337 B.R. 549, 551 (Bankr. M.D.N.C.  2006) (same).

---

will do one of four things: surrender, redeem, reaffirm, or assume an unexpired lease'"); In re Miller, 443 B.R. 54, 58 (Bankr. D. Del. 2011) ("New section 362(h) thus changed the pre-BAPCPA analysis because the debtor must now indicate whether she will surrender, reaffirm, redeem, or assume an unexpired lease, *and then perform accordingly*.  Consequently, the pre-BAPCPA 'ride through' option available to debtors in the Third Circuit has been narrowed."); but see In re Baker, 390 B.R. 524 (Bankr. D. Del. 2008), aff'd Ford Motor Credit Co. v. Baker (In re Baker), 400 B.R. 136 (D. Del. 2009) (Third Circuit Court of Appeals' decision in Price v. Delaware State Police Fed. Credit Union (In re Price), 370 F.3d 362, 372 (3d. Cir. 2004), which held "that the enumeration of three options for treatment of secured property under former section 521(2) – i.e., surrender, redemption or reaffirmation – did not preclude the debtor from exercising a so-called 'fourth option' – i.e., retaining the property while remaining current on payments" was not affected by changes in BAPCPA and remained controlling law.).

But for the following reasons, this Court reads subsections (A) and (B) as ambiguous with regard to *when* the Automatic Stay terminates under § 362(h)(1) and, consequently, *when* a Chapter 7 trustee is required to file a motion under (h)(2) to prevent the operation of (h)(1) and preserve the asset for the estate. The statute says that the Automatic Stay is "terminated . . . if the debtor fails within the applicable time set by section 521(a)(2)" to: (A) timely fulfill the Filing Requirement "*and*" (B) timely fulfill the Performance Requirement. 11 U.S.C. § 362(h)(1). This could mean that the Automatic Stay is terminated only if the debtor fails to fulfill the Filing Requirement *and* fails to fulfill the Performance Requirement. See In re Norton, 347 B.R. 291, 297 (Bankr. E.D. Tenn. 2006). Or the subsections could be interpreted as terminating the Automatic Stay unless the debtor *complies* with both the Filing Requirement and the Performance Requirement – i.e., fails to fulfill either one of the requirements. See In re McMullen, 443 B.R. 67, 72-73 (Bankr. E.D.N.C. 2010)

In In re Norton, the bankruptcy court interpreted § 362(h)(1) as requiring a failure of the debtor to comply with *both* the Filing Requirement and the Performance Requirement before the Automatic Stay would terminate. 347 B.R. at 297 (Bankr. E.D. Tenn. 2006). Therefore, the Automatic Stay could not terminate, under the Norton court's reasoning, until the later of the two deadlines found in § 521(a)(2) – or 30 days following the first date set for the meeting of creditors. This reading of the statute, while defensible from the way in which it is drafted, leads to the essential problem raised by the In re McMullen court; namely, that debtors could avoid termination of the Automatic Stay under § 362(h)(1) by filing a compliant Statement of Intent, while failing to ultimately carry through with their stated intention. See In re McMullen, 443 B.R. at 73.

16

This result is plainly at odds with the purpose of the amendment articulated in its legislative history.  See Recovery Grp., Inc. v. Comm'r of Internal Revenue, 652 F.3d 122, 127 (1st Cir. 2011) (legislative history may be analyzed to determine congressional intent where statutory language is ambiguous).    While the legislative history of § 362(h)(1) is decidedly sparse, it is at least clear that the intent of § 362(h)(1) was to "terminate the automatic stay with respect to personal property *if the debtor does not timely reaffirm the underlying obligation or redeem the property*."  H.R. Rep. 109-31(I), at 11 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 103 (emphasis supplied).  While requiring the timely filing of a Statement of Intent (and making a proper election therein) encourages debtors to make their choice early in the case, the legislation was primarily aimed at forcing debtors to actually carry through on that choice within certain deadlines. Interpreting § 362(h)(1) as terminating the automatic stay only if a debtor failed to *both* file and perform would undercut the purpose of § 362(h)(1) by allowing debtors to file, but not perform under, a Statement of Intent without consequence.  Accordingly, the Court agrees with the In re McMullen court's conclusion that *either* the failure to properly file the Statement of Intent *or* to perform according to a properly-filed Statement of Intent will trigger the termination of the Automatic Stay under § 362(h)(1).

But given the ambiguity in the statute, the Court is still left with the question of timing – assuming a debtor has failed to fulfill either the Filing Requirement or the Performance Requirement, *when* does the automatic stay terminate and the property become non-estate property under § 362(h)(1), and, therefore, by *when* must the trustee file an (h)(2) motion, if necessary?  Put another way, if a debtor fails to file a Statement of Intent or does not make a sanctioned election in a timely-filed Statement of Intent,

does the Automatic Stay terminate 30 days after the petition date?  Or 30 days after the first date set for the meeting of creditors?  Given the profound consequences that would redound to bankruptcy estates if the Automatic Stay terminated and property was removed from the estate 30 days after the petition date, the Court is compelled to conclude that the termination of the Automatic Stay and removal of property from the bankruptcy estate under § 362(h)(1) cannot occur until the passage of the latter of the two deadlines found in § 521(a)(2) – 30 days from the first date set for the 341 meeting. 11 U.S.C. § 521(a)(2)(B).

"The essential duties of the trustee in a Chapter 7 case are to collect and reduce to money the assets of the debtor's estate and then to distribute that money to the creditors."  William L. Norton, Jr., 1 Norton Bankr. L. & Prac. 3d § 3:12.  In furtherance of those duties, the Bankruptcy Code gives a Chapter 7 trustee "the power to recover property for the estate through the avoidance of various types of transfers from the debtor or from the estate."  Collier on Bankr. (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ¶ 700.04.  The meeting of creditors required by § 341 is critical to a Chapter 7 trustee's ability to perform his or her duties, primarily because it is almost invariably the first opportunity for a trustee to question the debtor in depth, and under oath, regarding *inter alia*, the debtor's assets, liabilities, prepetition transfers, and other relevant financial matters.

But the 341 Meeting is very often scheduled *more* than 30 days after the petition date – a natural consequence of the fact that the 341 Meetings must be scheduled between 21 and 40 days after the commencement of the case.  See Fed. R. Bankr. P. 2003(a).  Interpreting § 362(h)(1) as allowing for the termination of the Automatic Stay

and *removal* of property from the bankruptcy estate at a time when it is highly probable

that neither the trustee nor the other creditors have had an opportunity to examine the

debtor would be, in a word, absurd.

There is nothing in the legislative history of § 362(h)(1) to suggest that Congress

intended that section to eviscerate long-established practice and principles underlying

the trustee's duties and ability to preserve, marshal, and distribute estate assets.

Accordingly, the Court is compelled to conclude that the deadline in § 541(a)(2) referred

to in § 362(h)(1) must be that deadline found in subsection (B) (30 days after the first

date set for the meeting of creditors).   To hold otherwise would be destructive to the

proper functioning of the bankruptcy system.   See Hamilton v. Lanning, 130 S.Ct. 2464,

2475-76 (2010) (rejecting interpretation of the Bankruptcy Code that "would produce

senseless results that [the Court did] not think Congress intended.").

This interpretation of the applicable deadline maintains a proper balance between

preservation of estate assets (by allowing for proper investigation into the debtor's

financial affairs prior to removing assets from the estate) and the desire of Congress,

through § 362(h)(1), to give greater protection to creditors where a debtor has failed to

surrender, redeem, or reaffirm personal property serving as collateral for the debt.   See

Morse v. Rudler (In re Rudler), 576 F.3d 37, 50 (1st Cir. 2009) (congressional intent

relevant to interpretation where "literal application of the statute would lead to absurd

results").[11]   This interpretation also makes sense in light of the fact that § 362(h)(1)(B)

---

[11] See also Perry v. Commerce Loan Co., 383 U.S. 392, 400 (1966) (When statutory language
leads to "absurd or futile results, however, this Court has looked beyond the words to the
purpose of the act" and has rejected unreasonable interpretations "plainly at variance with the
policy of the legislation as a whole.") (quoting United States v. Am. Trucking Assns., 310 U.S.
534, 543 (1940)); Helvering v. Hammel, 311 U.S. 504, 510-11 (1941) ("Courts in the
interpretation of a statute have some scope for adopting a restricted rather than a literal or usual

allows for the amendment of a Statement of Intent within 30 days from the first date set for the 341 Meeting.[12]  Because subsection (B) allows for such amendments, it cannot be determined whether the Debtor has fully complied with both the Filing Requirement and the Performance Requirement until the later deadline has run.

In sum, the ambiguity in subsections (A) and (B) of § 362(h)(1) regarding the time when the automatic stay terminates (and, hence, the deadline by which the trustee must file a § 362(h)(2) motion) compels the conclusion that employing the deadline set forth in § 521(a)(2)(B) – 30 days after the first date set for the meeting of creditors – is most consistent with both the purpose of § 362(h)(1) and the long-standing purposes of and practices under the Bankruptcy Code as a whole.  Accordingly, this Court holds that, where a debtor fails to file (or file properly) a Statement of Intent *or* fails to perform according to his or her stated intent, the Automatic Stay will not terminate and personal property will not be removed from the bankruptcy estate pursuant to § 362(h)(1) until the expiration of 30 days after the first date set for the 341 Meeting.[13]

---

meaning of its words where acceptance of that meaning would lead to absurd results or would thwart the obvious purpose of the statute.") (citing Haggar Co. v. Helvering, 308 U.S. 389 (1940); United States v. Katz, 271 U.S. 354, 362 (1926)).

[12] See 11 U.S.C. § 362(h)(1)(B) (addressing the failure of the debtor to "take timely the action specified in [the Statement of Intent] *as it may be amended before expiration of the period for taking such action*") (emphasis supplied).

[13] This Court is mindful that it has rewritten § 362(h) in two respects.  First, it has changed the word "and," positioned between § 362(h)(1)(A) and (B), to "or."  Second, it has supplied the date for termination of the Automatic Stay where the statute has, arguably, offered two mutually exclusive alternatives.  Courts should be very careful to avoid acting or being viewed to act as if they are a legislative body.  But where the legislative body, here the Congress, has put a structure in place that, if taken literally, is ambiguous, can lead to absurd results, and does not serve the interests of those that legislative history indicates were to be protected, the Court has no choice but to supply the fix that appears most likely to be the one that would have been adopted by the legislative body had it seen the problem that its language created.  See Hamilton v. Lanning, 130 S.Ct. at 2475.

Here, the Debtor timely filed a Statement of Intent, and noted that he intended to retain the Cadillac secured by Source One's lien.  The Debtor did not indicate that he intended to either redeem the Cadillac or reaffirm the underlying debt.  Thus, it is irrelevant whether the Debtor "timely [took] the action specified in such statement" (i.e., retaining the Cadillac and making monthly payments to Source One), see 11 U.S.C. § 362(h)(1)(B), because he failed to comply with the Filing Requirement established by § 362(h)(1)(A) and § 521(a)(2)(A) by not indicating that he intended to either redeem the Cadillac or reaffirm the underlying debt.

The Trustee argues, however, that § 362(h)(1) does not apply because Source One did not have a perfected lien on the Cadillac.  This Court respectfully disagrees. Section § 362(h)(1) applies to personal property that "secures" a claim.  11 U.S.C. § 362(h)(1). It does not contain any language limiting the application of that section to *perfected* security interests.[14]   As § 362(h)(1) makes no provision for the additional requirement that the security interest be "perfected," the Court reads that section as requiring only that the claim be secured.  See In re Erving Indus., Inc., 432 B.R. 354, 374 (Bankr. D. Mass. 2010) ("The Court should not find an ambiguity where there is none . . .

---

[14] This Court does not read In re Houseal as establishing a "perfected security interest" requirement under § 362(h)(1).  In that case, the Chapter 7 debtor indicated an intent to surrender a vehicle to a secured creditor, but did not actually surrender the vehicle. 2007 WL 5582053, at *1.  Subsequently, the Trustee filed a motion to sell the vehicle, noting that the alleged secured creditor had provided *no* proof of its secured interest.  Id.  The creditor argued that the trustee could not sell the vehicle because the automatic stay had previously terminated, "and the property was abandoned," pursuant to § 362(h)(1)(B).  Id.  Ultimately, the Court declined to address the parties' various arguments regarding the trustee's ability to sell the vehicle because the question remained whether the creditor had a "valid security interest" in the vehicle, and thus whether § 362(h) even applied.  Id., at *2.  The court did not hold that the creditor would need to demonstrate a "perfected" security interest; rather, the court concluded that it first needed evidence as to whether the creditor had any secured interest in the vehicle at all.  Id.; see also In re Baine, 393 B.R. at 567 n.3 (In re Houseal decision was "limited to allowing [the] trustee[ ] to continue preliminary investigation into whether the creditor[ ] at issue [was] really 'secured.'").

.") (citing <u>Lamie v. U.S. Trustee</u>, 540 U.S. 526, 533 (2004); <u>Conn. Nat'l Bank v. Germain</u>, 503 U.S. 249, 253-54 (1992); <u>United States v. Lewis</u>, 554 F.3d 208, 214 (1st Cir. 2009)).

A claim is "secured" if it is "supported or backed by security or collateral." Black's Law Dictionary (9th ed.) 1475. "[A] creditor obtains a security interest in property, and becomes 'secured' with respect to the property, by entering into a security agreement." <u>In re Baine</u>, 393 B.R. at 566 (citing 11 U.S.C. § 101(51) ("security interest" under the Code means a "lien created by an agreement.")). Enforceability of a security agreement giving rise to a "secured claim" is distinguished from "perfection." <u>See</u> James J. White & Robert S. Summers, Uniform Commercial Code, § 31-1 (2009). "It is perfection . . . that affords maximum secured creditor protection against third parties," <u>id.</u>, but "it is the security interest created by an agreement between a debtor and a creditor that makes the creditor a secured party." <u>In re Baine</u>, 393 B.R. at 566; <u>see also</u> Mass. Gen. Laws ch. 106 § 9-102(a)(72)(A) ("Secured party" defined as "a person in whose favor a security interest is created or provided for under a security agreement . . . .").

The validity of the Contract as a security agreement between the Debtor and Source One is determined in accordance with applicable state law (here, Massachusetts law). <u>See</u> <u>In re Inofin, Inc.</u>, 455 B.R. 19, 34 (Bankr. D. Mass. 2011) (citing <u>Levitz v. Arons Arcadia Ins. Agency, Inc. (In re Levitz Ins. Agency, Inc.)</u>, 152 B.R. 693, 697 (Bankr. D. Mass. 1992); <u>Butner v. United States</u>, 440 U.S. 48 (1979)). The Massachusetts version of the Uniform Commercial Code, Article 9, governs the creation and enforceability of Source One's security interest in the Cadillac. <u>Baystate Drywall, Inc. v. Chicopee Sav. Bank</u>, 429 N.E.2d 1138, 1140 (Mass. 1982); <u>see also</u> <u>In re Inofin</u>, 455 B.R. at 35. The Massachusetts Supreme Judicial Court (the "SJC") has summarized

the requirements for creating a security interest in a motor vehicle found at Mass.

General Laws ch. 106, § 9-203:

> where the collateral is not in the possession of the secured party, as is the
> case here, three conditions must be met before a security interest in the
> collateral can attach.  There must be a proper security agreement signed
> by the debtor and containing a description of the collateral; the debtor must
> have rights in the collateral; and value must be given.

Baystate Drywall, 429 N.E.2d at 1140 (citations omitted).[15]

While maintaining that Source One's security interest in the Cadillac was not

perfected, the Trustee has not suggested that Source One does not have a security

interest in the Cadillac, and the Court finds that, under relevant Massachusetts law,

Source One held a valid security interest in the Cadillac on the Petition Date.  There is

no dispute that value was given and the Debtor had rights in the Cadillac.  The Contract

is signed by the Debtor, provides a description of the Cadillac (including the vehicle

identification number), and states that the Debtor is granting a security interest in the

Cadillac to secure the repayment of Source One's loan to the Debtor for the purchase of

---

[15] Although in Baystate Drywall the SJC was addressing an earlier version of § 9-203, under the
current version of § 9-203 (enacted in 2001), the requirements for the creation of a security
interest as relevant to this case are identical.  The current version of § 9-203 provides:

. . .

> (b) Enforceability.  . . . a security interest is enforceable against the debtor and
> third parties with respect to the collateral only if:
>
>> (1) value has been given;
>>
>> (2) the debtor has rights in the collateral or the power to transfer rights in
>> the collateral to a secured party; and
>>
>> (3) one of the following conditions is met:
>>
>>> (A) the debtor has authenticated a security agreement that
>>> provides a description of the collateral . . . .

Mass. Gen. Laws ch. 106, § 9-203(b).

the vehicle. Accordingly, the Court concludes that the Cadillac is personal property of the Debtor "securing in whole or in part" Source One's claim for purposes of § 362(h)(1).

Likewise, the Court necessarily rejects the Trustee's argument that Source One is not in the "class" of creditors § 362(h)(1) was drafted to protect. The language of the section must, if possible, be applied according to its terms. Adding an additional policy-based requirement to § 362(h)(1) as argued by the Trustee (namely, that the section should apply only to creditors who are not receiving postpetition payments or would be entitled to repossess the property under relevant nonbankruptcy law) would be inappropriate. See In re Erving Indus., 432 B.R. at 374 ("The Court should not . . . make policy decisions to limit the application of Bankruptcy Code provisions when the language of the statute is otherwise clear.").

Accordingly, the Court finds that § 362(h)(1) is applicable in this case. The Debtor failed to indicate in his Statement of Intent that the Cadillac would be surrendered or redeemed or that the underlying debt would be reaffirmed. Thus, the Automatic Stay terminated with respect to the Cadillac on January 7, 2011 (30 days after the first date set for the meeting of creditors) and the Cadillac was thereafter "no longer property of the estate." 11 U.S.C. § 362(h)(1). As the Automatic Stay was not in effect (and the Cadillac was no longer property of the bankruptcy estate) at the time Source One took steps to perfect its security interest in the Cadillac, Source One's actions did not violate the Automatic Stay with regard to either the Debtor or the estate and the Trustee's Sanctions Motion must be denied.[16]

---

[16] Because the Court concludes that the Automatic Stay was not violated, the Court need not address the parties' arguments regarding the imposition of sanctions, including the ability of a Chapter 7 trustee to seek sanctions under § 362(k) or § 105(a) and the applicability of the "good faith" exception in § 362(k)(2).

### B.     The Motion to Dismiss

The Court has ruled that Source One held a valid security interest in the Cadillac as of the Petition Date.  But it appears from the undisputed facts on record that Source One's security interest was not perfected when Debtor's case was filed:

> The perfection of a security interest in a motor vehicle is governed by Mass. Gen. Laws ch. 106, the Uniform Commercial Code, and Mass. Gen. Laws ch. 90D, the Motor Vehicle Certificate of Title Act. . . .   Chapter 90D provides that:
>
>> A security interest in a vehicle for which a certificate of title is issued under this chapter is perfected by the delivery to the registrar of the existing *certificate of title containing the name and address of the lienholder* and the date of his security agreement and the required fee. . . .
>
> Mass. Gen. Laws ch. 90D, § 21.  The Supreme Judicial Court has clearly stated that "the exclusive method of perfecting a security interest in a motor vehicle is through notation of the lien on a valid certificate of title."  City of Boston v. Rockland Trust Co., 391 Mass. 48, 51, 460 N.E.2d 1269 (1984).

BankBoston, N.A. v. Desmond, 256 B.R. 348, 350 (D. Mass. 2000) (emphasis supplied); see Mass. Gen. Laws ch. 90D, § 21.  As of the Petition Date, Source One was not identified as a lienholder on the Title (then in the Debtor's possession), and its lien was thus unperfected at the commencement of the case.

Because Source One's security interest was not perfected on the Petition Date, its lien became susceptible to avoidance by the Trustee pursuant to § 544(a)(1) of the Code.  Under § 544(a)(1), "[a] trustee in bankruptcy has, as of the commencement of the case, the status of a hypothetical lien creditor and is empowered to avoid any transfer of property of the debtor that could be avoided by such creditor."  BankBoston, 256 B.R. at 350.  Section 544(a)(1) (often referred to, along with subsections (a)(2) and (3), as the "strong arm" clause) provides:

> (a) The trustee shall have, *as of the commencement of the case*, . . . the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –
>
> > (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

11 U.S.C. § 544(a)(1) (emphasis supplied).  "The purpose of the 'strong arm clause' is to cut off unperfected security interests, secret liens, and undisclosed prepetition claims against the debtor's property as of the commencement of the case."  Ostrander v. Gardner (In re Millivision, Inc.), 331 B.R. 515, 522 n.12 (Bankr. D. Mass. 2005), aff'd 474 F.3d 4 (1st Cir. 2007) (quoting Collier on Bankr. (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2005) ¶ 544.03).

The rights of the Trustee as a hypothetical lien creditor under § 544(a)(1) are determined under state law.  Abboud v. The Ground Round, Inc., 482 F.3d 15, 20 (1st Cir. 2007).   Under Massachusetts law, a lien creditor has superior rights to an unperfected security interest in a motor vehicle.  See Mass. Gen. Laws ch. 106, § 9-317 ("A security interest . . . is subordinate to the rights of: . . . (2) . . . a person that becomes a lien creditor before the earlier of the time: . . . (A) the security interest . . . is perfected . . . .").  Since the Trustee's rights as a hypothetical lienholder under § 544(a)(1) are measured "as of the commencement of the case," 11 U.S.C. § 544(a); see also In re Millivision, 331 B.R. at  521, the Trustee's hypothetical lienholder status trumped Source One's unperfected security interest in the Cadillac on the Petition Date.

In the usual case, the result on these facts would be cut and dry – an unperfected lien can be avoided pursuant to § 544(a)(1) and preserved for the benefit of the

bankruptcy estate by § 551; and pursuant to § 550, the Trustee may recover either the property or its value from the initial transferee.  But where, as here, the property is no longer property of the estate, and was not property of the estate at the time the Trustee filed the Complaint to avoid Source One's lien on the Cadillac, the question raised by the Motion to Dismiss is whether the Trustee's action under §§ 544(a)(1) and 551 remains viable.

At least one court has concluded, on almost identical facts, that removal of personal property from the bankruptcy estate under § 362(h)(1) can be analogized to the abandonment of estate property governed by § 554, because both have the "effect of divesting the estate of all its interests in the property."  In re Baine, 393 B.R. at 568.  The court in In re Baine, citing to Keller v. CIT Grp./Consumer Fin., Inc. (In re Keller), 229 B.R. 900, 903 (Bankr. S.D. Ohio 1998), and In re Burchette, 2002 WL 31051033 (Bankr. M.D.N.C. June 21, 2002), stated that a trustee loses the right to avoid an unperfected lien under § 544(a)(1) when the property subject to the otherwise-avoidable lien has been abandoned and is no longer property of the estate.  In re Baine, 393 B.R. at 568.  Accordingly, the In re Baine court reasoned, removal of estate property pursuant to § 362(h)(1) divests the trustee of the right to later avoid an unperfected lien on that property.  Id.

While In re Baine has been criticized for analogizing the removal of property from the bankruptcy estate under § 362(h)(1) to the abandonment of estate property under § 544,[17] this Court believes such criticism misses the point.  The In re Baine court did not say that § 362(h) actually effects an "abandonment" of estate property.  Rather, the court

---

[17] See, e.g., Neil C. Gordon, Section 362(h) Does Not Deprive a Trustee of Standing to Avoid a Lien, 29-10 Am. Bankr. Inst. J. 50 (Dec. 2010); In re Blixseth, 454 B.R. at 99 n.11.

insightfully recognized that the removal of estate property by operation of specific Code

provisions is substantially the same for both abandonment and § 362(h).[18]  Where this

Court disagrees with <u>Baine</u> and other cases addressing similar issues[19] is in their

conclusion that the consequence of both is the nullification of a trustee's ability to avoid a

lien on the property under § 544(a)(1).[20]

   The language used in § 544(a)(1) does not limit a trustee's avoidance power

under that section to only property of the estate.  Instead, a trustee is given, "as of the

---

[18]  The similarity between the removal of property from the estate under § 362(h)(1) and abandonment under § 554 is reflected in the language used by other courts to describe the consequences of § 362(h)(1).  <u>See, e.g.</u>, <u>In re Dumont</u>, 383 B.R. at 486 (summarizing § 362(h) and stating that  "section 362(h) terminates the . . . stay as to personal property securing a claim . . . (*and also abandons that property*) . . . ."); <u>In re Houseal</u>, 2007 WL 5582053, at *2 ("Pursuant to 11 U.S.C. § 362(h)(1), the stay lifts and *abandonment* of the personal property occurs . . . .").

[19]  <u>See, e.g.</u> <u>In re Burchette</u>, 2002 WL 31051033, *2 (where property was disclosed by debtor prior to closure of the case, court denied motion to reopen case to allow trustee to avoid defective security interest, because property had been abandoned and there were no remaining assets to administer); <u>In re Keller</u>, 229 B.R. at 902-03 (where trustee had abandoned property, court no longer  had jurisdiction over property and trustee no longer had control over property for purposes of avoiding defective lien under § 544(a)(3)); <u>Huntington Nat'l Bank v. Hunter (In re Hunter)</u>, 76 B.R. 117, 120 (Bankr. S.D. Ohio 1987) (where trustee had abandoned property, the abandonment would not be revoked to allow the trustee to avoid the security interest on the property as a preference under § 547; once abandoned, the property reverted to the debtor and was no longer under the control of the trustee as property of the bankruptcy estate); <u>Putterbaugh v. Int'l Harvester Credit Corp.</u>, 32 B.R. 506 (Bankr. D. Me. 1983) (trustee sought to avoid, as preferential transfer, a judicial lien attachment on property previously abandoned by the trustee; the court held that, due to the abandonment, "the trustee no longer has any interest in whether or not International Harvester's attachment is a preferential transfer . . . . whether or not the requested relief is granted, the bankrupt estate would remain unaffected,' the trustee's complaint shall be dismissed as moot.")  (quoting <u>In re REA Express. Inc.</u>, 2 B.R. 730, 732 (S.D.N.Y. 1980)); <u>see also</u> <u>Old West Annuity & Life Ins. Co. v. The Apollo Group</u>, 605 F.3d 856, 863 (11th Cir. 2010) (trustee's status as hypothetical lien creditor under § 544 "attaches 'as of the commencement of the case,'" and terminates when the property is no longer property of the estate).

[20]  Where the abandonment of disclosed property occurs automatically upon closing of the bankruptcy case pursuant to § 554(c), however, a more serious obstacle to a subsequent attempt by the trustee to avoid a defective security interest on the property is found, not in the concept of abandonment, but in the limitation on the avoidance powers established by § 546, which bars commencement of avoidance actions by the trustee after "the time the case is closed."  11 U.S.C. § 546(a)(2).

commencement of the case," the status of a hypothetical lienholder and is empowered to "avoid any transfer *of property of the debtor*" avoidable by a hypothetical lienholder.  11 U.S.C. § 544(a) (emphasis supplied).

While "property of the debtor" often encompasses property that is also "property of the estate," the terms are not necessarily co-extensive and are differentiated throughout the Bankruptcy Code.  See, e.g., Jumpp v. Chase Home Fin., LLC (In re Jumpp), 356 B.R. 789, 794-95 (B.A.P. 1st Cir. 2006) (noting various Code provisions "differentiating between the debtor, property of the debtor, and property of the estate").  Congress drafted § 544(a)(1) as applicable to "property of the debtor" and did not limit the trustee's powers to only "property of the estate."  If Congress wanted to limit the trustee's powers to only property that remained property of the estate postpetition, it could have done so in § 544 itself, through § 546, or in some other Code provision.[21]  Having plainly extended the § 544(a) strong arm powers to property of the *debtor*, the Court must conclude the Trustee's § 544(a)(1) avoiding power is not limited by the removal of property from the estate pursuant to § 362(h)(1).

But "[e]ffective avoidance by a trustee is a two-step process. First, the trustee must avoid the transaction, then he must effect a recovery."  Gold v. United States (In re Laines), 352 B.R. 420, 425-26 (Bankr. E.D. Va. 2006) (internal citations omitted); see also Collins v. Cayuga Energy, Inc. (In re South Glens Falls Energy, LLC), 2009 WL 2883141, *3-4 (Bankr. N.D.N.Y. Jan. 30, 2009) (avoidance and recovery are separate concepts and processes) (collecting cases).

---

[21] See, e.g., 11 U.S.C. § 362(c)(1), which continues "the stay of an act against property of the estate . . . *until such property is no longer property of the estate.*" (emphasis supplied).

To recover the avoided lien for the benefit of the Debtor's bankruptcy estate, the Trustee relies, not on § 550, but on the automatic preservation of avoided liens under § 551. Section 551 provides that "[a]ny transfer avoided under section . . . 544 . . . is preserved for the benefit of the estate *but only with respect to property of the estate*." 11 U.S.C. § 551 (emphasis supplied). As the Cadillac is no longer property of the estate, § 551 cannot provide the Trustee with a source of recovery for the avoidance of Source One's lien. See Waldshmidt v. Metals (In re Ward), 42 B.R. 946, 952 (Bankr. M.D. Tenn. 1984). And since the Trustee's theory for the recovery of postpetition payments to Source One is dependent upon preservation of the avoided lien under § 551, see White v. Wachovia Dealer Servs. (In re Wyatt), 440 B.R. 204, 213 (Bankr. D.C. 2010), the request for recovery of those payments must likewise be denied. [22]

The primary purpose of § 551 is to provide the Trustee with the additional lever of employing the avoided lien in order to retain its (and the bankruptcy estate's) priority over junior liens. Here, the Trustee has no need of this additional statutory assistance, as

---

[22] The Court also notes its inclination to disagree with the analysis and conclusion reached in In re Wyatt that would require a court to look at the debtor's "motivation" for making postpetition payments to a secured creditor whose lien is ultimately avoided by the trustee, on grounds that the trustee may recover such payments as "proceeds" of the avoided lien. 440 B.R. at 213-17. This Court's dubious response is based on the many other cases reaching the opposition conclusion based on plain statutory language. See, e.g., Old West, 605 F.3d at 864 (postpetition transfers can only be avoided under § 549); Morris v. Vulcan Chem. Credit Union (In re Rubia), 257 B.R. 324, 327-28 (B.A.P. 10th Cir. 2001), aff'd 2001 WL 1580933 (10th Cir. Dec. 12, 2001) (where trustee avoided lien as preferential transfer, debtor's post-petition payments to creditor were not recoverable by the trustee because avoidance and preservation of lien gave the trustee rights in the vehicle, but not a right to collect post-petition payments, although the lender would have to reduce its (now unsecured) claim by any amount paid by the debtor post-petition); Kelley v. Chevy Chase Bank (In re Smith), 236 B.R. 91, 101 (Bankr. M.D. Ga. 1999) (where trustee avoided lien, postpetition payments to creditor were not recoverable because they were paid by debtor's post-petition earnings and did not involve estate property); In re Closson, 100 B.R. 345, 347 (Bankr. S.D. Ohio 1989) (where trustee avoided lien on vehicle, trustee failed to establish right under § 551 to recover postpetition payments to creditor: "avoidance of the lien does not automatically create a right of recovery of the payments made under the contract between debtor and lienholder . . . . [t]he trustee bears the burden of establishing a right to recover the Postpetition Payments – either pursuant to 11 U.S.C. § 549 or some other Code provision . . . .").

there are no junior liens.  See Lassman v. Onewest Bank (In re Swift), -- B.R. --, Bankr. No. 10-20364, AP No. 11-1016, 2011 WL4711694, *4 (Bankr. D. Mass. Oct. 7, 2011); Riley v. Sullivan (In re Sullivan), 387 B.R. 353, 358 (B.A.P. 1st Cir. 2008).  Rather, the Trustee's recovery is more properly sought under § 550(a), which provides that "to the extent that a transfer is avoided under section 544, . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee . . . ."  11 U.S.C. § 550(a)(1).  The estate's rights against the Cadillac arose as of the Petition Date.  Once Source One's lien is avoided, the Trustee holds the estate's rights under § 550.  And that section permits the Trustee to recover the Cadillac or its value.  There is no requirement in § 550 that the Cadillac or its value be property of the estate at the time of recovery.[23]

Accordingly, the Motion to Dismiss must be denied with respect to the Trustee's claim for relief under § 544(a) and granted with respect to the Trustee's claims under § 551, including the Trustee's demand that Source One turn over the Debtor's postpetition payments.  As recovery under § 550(a) appears viable, however, the Trustee will be granted leave to amend the Complaint.

---

[23] Indeed, the docket of this case reflects that, in the interim, the Trustee requested and obtained leave of this Court to sell the Cadillac, without any objection by the Debtor or Source One.  See Motion to Sell Property of the Estate at Public Auction, Sept. 16, 2011, ECF No. 52; Notice of Intended Sale of Estate Property, Sept. 19, 2011, ECF No. 55; Order on Motion to Sell Property of the Estate by Public Auction, Oct. 20, 2011, ECF No. 61.  While the consequences of that sale or the disposition of the sale proceeds are not presently before the Court, the failure of the Debtor or Source One to object to the sale may reflect their conclusion that, even if the Cadillac is no longer property of the bankruptcy estate, it is certainly an appropriate target of recovery under § 550.

IV.    CONCLUSION

This Court could not agree more with one commentator's recent observation that "Section 362(h) is obviously a trustee land mine, but it is not possible to wish it away." Wendell J. Sherk, Section 362(h) Deprives a Trustee of Property of the Estate, 30-8 Am. Bankr. Inst. J. 42 (Oct. 2011).  The provisions of § 362(h) have the potential to strip bankruptcy estates of valuable property without court order or intervention.  Trustees will have yet another deadline and another duty to fulfill in order to preserve personal property that may have value for the estate.  While the Court has taken the liberty of interpreting § 362(h) in a fashion which does the least harm to Congress's perceived statutory goals, this Court cannot merely "wish away" its underlying scheme.

The Court cannot resist one last observation.  By dint of § 362(h)(1), Source One has escaped the consequences of a violation of the Automatic Stay, which, in light of the willfulness of its actions, would have been severe indeed.  But what benefit has Source One achieved by first ignoring and then attempting an end-run around the Chapter 7 trustee?  At day's end, it will have derived no monetary benefit from its efforts to perfect its lien against the Cadillac, and has incurred an even greater loss on account of the costs of its defense.

In any event, for all the reasons articulated herein, the Court will deny the Trustee's Sanctions Motion.  The Court will also grant Source One's Motion to Dismiss to the extent the Complaint seeks relief under § 551.  But because the Court concludes that the avoidance of the lien is not precluded, the Motion to Dismiss will be denied with respect to the Trustee's claim under § 544(a)(1). The Trustee will be granted ten (10) days to further amend his Complaint to assert a claim under § 550(a), following which

the Court will schedule a further pretrial conference in order to determine the parties'
respective positions with respect to disposing of the Adversary Proceeding.  Orders in
conformity with this memorandum shall issue forthwith.


DATED: January 6, 2012                    By the Court,

                                          _____
                                          Henry J. Boroff
                                          United States Bankruptcy Judge